IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Armand M. Clemons, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 3:20-cv-50330 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Dr. Merrill Zahtz, ) | |
| ) | |
| *Defendant*. ) | |

**REPORT AND RECOMMENDATION**

For the following reasons, it is this Court's report and recommendation that Defendant's request for dismissal of the third amended complaint be granted and that Plaintiff's claims be dismissed without prejudice for failure to exhaust available administrative remedies. Any objection to this report and recommendation must be filed by September 15, 2021. *See* Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-61 (7th Cir. 1989).

**BACKGROUND**

**I. Procedural History**

Plaintiff Armand M. Clemons,[1] now an inmate at Logan Correctional Center, filed a *pro se* civil rights action in August 2020 pursuant to 42 U.S.C. § 1983. Dkt. 1. Plaintiff raised claims about multiple events that occurred at several institutions. As relevant here, Plaintiff alleged that following an attack in June 2018 at Dixon Correctional Center ("Dixon"), a nurse refused to provide treatment for her wrist injury. A Dixon correctional officer and a nurse also denied her request to see a doctor. When Plaintiff was transferred to Robinson Correctional Center ("Robinson"), she received an x-ray that revealed her wrist was fractured. After her transfer back to Dixon in April 2019, Dr. Merrill Zahtz, the Medical Director at Dixon, failed to provide adequate medical treatment for her wrist injury. The district court dismissed Plaintiff's complaint without prejudice for improper joinder of claims. Dkt. 14.

In her amended complaint, Plaintiff again alleged, in part, that following an inmate attack in June 2018 a nurse refused her medical treatment. Dkt. 15. Like the first complaint, Plaintiff's only mention of Dr. Zahtz was in relation to his treatment for her wrist injury in April 2019. The district court again dismissed Plaintiff's amended complaint for improper joinder of claims. Dkt. 17.

---

[1] Plaintiff's preferred pronouns are she/her. *See* Dkt. 7.

1

In her second amended complaint, Plaintiff narrowed her claims and named only Wexford and Dr. Zahtz as defendants. Dkt. 18. Plaintiff alleged that on June 12, 2018, she was attacked by another inmate. Plaintiff was taken to see a nurse and complained of wrist and hand pain. The nurse would not treat her injury. The nurse told Plaintiff that her wrist was only bruised and denied her request to see Dr. Zahtz. Plaintiff was placed in segregation for the next two weeks until she was transferred to another facility. While in segregation, Plaintiff's requests for pain medication and an x-ray from the nurses were denied. Plaintiff sent Dr. Zahtz several "slips" seeking medical treatment for her wrist, but Dr. Zahtz refused to look at her wrist in segregation. Dkt. 18 at 8. Following Plaintiff's transfer to Robinson, she continued to complain about severe pain. On September 13, 2018, Plaintiff received an x-ray and was told her left wrist was fractured. Plaintiff was later transferred back to Dixon in April 2019. For the next several months, the nurses and Dr. Zahtz refused to provide Plaintiff with medical treatment for her wrist injury.

After screening Plaintiff's second amended complaint, the district court allowed her to proceed with a deliberate indifference claim against Dr. Zahtz. Dkt. 20. The district court noted, however, that while Plaintiff's complaint mentioned several nurses in the recitation of facts, she did not name them as defendants. Dkt. 20 at n.1. Accordingly, the district court stated that to proceed against these nurses Plaintiff would need to identify them and name them in an amended pleading.

In February 2021, this Court recruited counsel for Plaintiff, and counsel filed a third amended complaint naming only Dr. Zahtz. Dkts. 33, 44. In this complaint, Plaintiff alleges that immediately following the inmate attack on June 12, 2018, a nurse that was supervised by Dr. Zahtz examined Plaintiff's injury and diagnosed her with a bruised left wrist. Plaintiff was then placed in segregation. Over the next two weeks, Plaintiff continued to experience pain and suffering and sought medical treatment from Dr. Zahtz. Dr. Zahtz "did not treat Plaintiff's left wrist and continued to diagnose Plaintiff with a bruised left wrist." Dkt. 44 at 3.

Plaintiff was then transferred to Robinson, where she was examined by Dr. Clifford Johnson, Jr. on September 13, 2018 and was diagnosed with a left wrist fracture. Dr. Johnson ordered a CT scan of Plaintiff's wrist so that surgical plans could be made. Plaintiff alleges that at no time prior to September 13, 2018 did she know that she suffered from a fractured left wrist. When Plaintiff was transferred back to Dixon, Dr. Zahtz did not order or approve surgery for Plaintiff's left wrist despite knowing that she suffered a fractured wrist and required surgery. In November 2020, Dr. Zahtz ultimately approved Plaintiff's wrist surgery, which she received in March 2021. Accordingly, Plaintiff alleges that Dr. Zahtz was deliberately indifferent to her serious medical condition, her requests for treatment, and Dr. Johnson's diagnosis and medical plan. Plaintiff also alleges that Dr. Zahtz provided inadequate medical treatment when he failed to diagnose and continued to misdiagnose Plaintiff's left wrist fracture, failed to properly treat her left wrist fracture, and failed to refer her to a medical specialist for treatment.

Defendant Dr. Zahtz answered and asserted the affirmative defense of failure to exhaust administrative remedies. The parties completed limited discovery and submitted briefing on that issue. *See* Dkts. 49, 51. On August 4, 2021, this Court conducted an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). The parties introduced several exhibits at the

hearing, *see* Dkt. 48,[2] and called two witnesses, Plaintiff and Debbie Knauer, Chairperson for the Administrative Review Board ("ARB").

## II. *Pavey* Hearing

At the hearing, Plaintiff testified that she sustained an injury to her left wrist on June 12, 2018, when she was attacked by another inmate. After the attack, Plaintiff was taken to the health care unit where a nurse looked at her wrist. Plaintiff complained about pain, asked for an x-ray, and asked to see the doctor. However, the nurse told her nothing was wrong, her wrist was only bruised, and did now allow Plaintiff to see Dr. Zahtz. Plaintiff was taken directly to segregation.

Plaintiff was in segregation from June 12, 2018 until June 27, 2018, when she was transferred to Robinson. Plaintiff explained that while in segregation, Dr. Zahtz would come once or twice a week to make his rounds and see other inmates. Plaintiff first testified that there were "multiple times" where she showed Dr. Zahtz her wrist and he told her nothing was wrong. However, when later asked by defense counsel if she saw Dr. Zahtz in segregation, she testified that Dr. Zahtz only looked at her wrist once through the chuckhole of her cell door.

Plaintiff testified that the nurses came to segregation every day. Plaintiff testified that she complained to the nurses every day that something felt wrong with her wrist, she was in pain, and she needed an x-ray and pain medication, but the nurses kept telling her there was nothing wrong and would not give her any pain medication. The nurses also would not allow Plaintiff to see Dr. Zahtz in the hospital at Dixon.

Plaintiff testified that she did not file a grievance while at Dixon because Dr. Zahtz and the nurses told her that nothing was wrong, and she was under the assumption that her wrist was only bruised. Plaintiff also testified that she could not write because of her wrist injury on her dominant hand. Plaintiff also testified that her request for a grievance form from Dixon staff while in segregation was ignored.

Plaintiff testified that while at Robinson, she eventually received an x-ray and was sent to see an outside specialist on September 13, 2018. The specialist diagnosed her with a fractured wrist and told her she needed surgery. That was the first time Plaintiff was told she had a broken left wrist. A few days later, Plaintiff found someone to help her write the grievance at issue.

Plaintiff testified that she filed only one grievance regarding the medical care she received for her wrist following the June 12, 2018 attack. Plaintiff filed the grievance on September 18, 2018, while at Robinson. Dkt. 48-3 at 2-3. On the same day, a counselor responded to Plaintiff's grievance and noted that it was outside of the prison's jurisdiction and instructed Plaintiff to send the grievance directly to the ARB. Plaintiff testified that her counselor sent her grievance directly

---

[2] This Court granted Defendant's unopposed motion to seal Plaintiff's medical records, which were later admitted into evidence without objection. Dkt. 55, 59. However, neither party referred to these medical records, which include treatment records from September 13, 2018 through April 15, 2021, at the hearing or in their briefs and this Court is not relying on those records in making this ruling. Accordingly, Plaintiff's medical records, Dkt. 48-8, are hereby stricken.

to the ARB. On September 26, 2018, the ARB rejected Plaintiff's grievance as untimely filed. Dkt. 48-3 at 1.

In her grievance, Plaintiff stated that on June 12, 2018, while incarcerated at Dixon, she was attacked by another inmate and sustained a broken left wrist. She was taken to the health care unit, where she complained to the nursing staff of severe wrist pain. Plaintiff was ignored when she sought treatment by the nurse, who acted like Plaintiff was a nuisance. The nurse told Plaintiff her wrist was only bruised and did nothing for her injury. Plaintiff stated that at Dixon, she was not given x-rays to determine if her wrist was broken and was denied basic medical treatment. Plaintiff "was not allowed to see the Prison Doctor[ ] or taken to a hospital." Dkt. 48-3 at 3. She was given no medical treatment or pain medication. Plaintiff also stated she "was not allowed to file a Grievance." Dkt. 48-3 at 3. Plaintiff stated that the delay in treatment was going to create future pain and suffering that could have been prevented. Plaintiff also stated that the nurses at Dixon acted at "Gatekeepers" because they decided who was allowed to see the doctor. Dkt. 48-3 at 3. Plaintiff stated she remained at Dixon until June 27, 2018, when she was transferred to Robinson.

Plaintiff testified that she provided all the information in her grievance that she could as to the identity of the nurses and the doctor. Plaintiff explained that she knew Dr. Zahtz's name but because she did not know how to spell it, she did not want to include a misspelled name out of fear that her grievance would be thrown out. She also did not include any descriptive information about Dr. Zahtz because he was the only doctor at Dixon.

## LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust available administrative remedies before filing a federal lawsuit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Pavey*, 544 F.3d at 740; *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). To exhaust administrative remedies, an inmate must proceed through all steps of the institution's grievance process that are available to him. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). That means the inmate must grieve his complaint "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). The PLRA does not, however, set forth the procedures an inmate must take to exhaust administrative remedies at a particular institution; rather, the procedures are established by each institution. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). The Seventh Circuit requires strict compliance with the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate "who does not properly take each step within the administrative process has failed to exhaust [administrative] remedies, and thus is foreclosed by § 1997e(a) from litigating." *Pozo*, 286 F.3d at 1024.

Failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216. The burden, therefore, is on the defendant to prove by a preponderance of the evidence that an administrative remedy was available to the plaintiff and that the plaintiff failed to exhaust that remedy. *Jones v. Dart*, No. 14 C 1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016) (collecting cases).

State law determines the administrative remedies that a state prisoner is required to exhaust. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (citing *King v. McCarthy*, 781 F.3d 889, 894 (7th Cir. 2016)). The grievance procedures for the Illinois Department of Corrections ("IDOC") are set forth in the Illinois Administrative Code. Ill. Admin. Code tit. 20, § 504.800, *et seq*. An inmate must first submit a grievance to his counselor. 20 Ill. Admin. Code § 504.810(a). If the inmate is not satisfied with the counselor's resolution, he must then file a formal grievance with his grievance officer. *Id.* "A grievance must be filed with the counselor or Grievance Officer [ ] within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." *Id.*

The grievance officer shall consider the grievance and report his findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *Id.* § 504.830(e). The CAO shall review the findings and recommendation and advise the offender of the decision in writing. *Id.* If, after the CAO responds, the inmate still believes that the grievance has not been resolved to his satisfaction, he may appeal in writing to the IDOC Director. *Id.* § 504.850(a). The ARB, appointed by the Director, must receive the appeal within 30 days after the date of the CAO's decision. *Id.* The ARB shall then submit a written report of its findings and recommendations to the Director, who shall review them and make a final determination of the grievance. *Id.* at § 504.850(d)-(e). An inmate does not exhaust his administrative remedies until the ARB rules upon his appeal. *See id.* § 504.850.

## DISCUSSION

Defendant argues that Plaintiff failed to exhaust her administrative remedies because: (1) she did not timely file a grievance for the claims against him; and (2) the grievance she filed did not name or otherwise describe him.

### I. Timeliness

Defendant argues that despite Plaintiff's knowledge that something was wrong with her wrist and her requests for medical attention following the June 12, 2018 attack, she did not file her grievance until almost 90 days later.

Dixon's grievance procedures provide that a "grievance must be filed with the counselor or Grievance Officer [ ] within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." 20 Ill. Admin. Code § 504.810(a). The parties dispute the triggering event that would start the 60-day period for Plaintiff to file her grievance. Defendant argues that Plaintiff's grievance was untimely because the problem giving rise to her grievance, namely the medical treatment for her wrist at Dixon, occurred in June 2018 following the attack. Plaintiff argues that she did not discover that Defendant's medical care was inadequate until September 13, 2018 when she was diagnosed with a left wrist fracture. Therefore, Plaintiff argues that the problem giving rise to her grievance did not occur until September 2018.

However, the Court must first address the allegations in Plaintiff's third amended complaint because "[t]he exhaustion requirement is claim specific. That is, the original grievance

must have alerted the prison to the nature of the wrong for which redress is sought in federal court. That rule follows common sense – the purpose of the exhaustion requirement is to make sure the prison learns about the prisoner's claim, and has a chance to address it before the court gets involved. Complaining to the prison about one thing – and the court about another – doesn't serve that function." *Boyd v. Pfister*, No. 18-CV-03275, 2020 WL 6381367, at *7 (N.D. Ill. Oct. 30, 2020) (internal quotation marks and citations omitted). Here, Plaintiff alleges that Defendant failed to provide her with adequate medical care while at Dixon on two separate occasions: (1) in June 2018 while she was in segregation before her transfer to Robinson; and (2) in April 2019 when Plaintiff was transferred back to Dixon after she received her fracture diagnosis. The Court will address each in turn.

### A. April 2019

Plaintiff filed her grievance in September 2018. However, a grievance cannot exhaust administrative remedies for conduct that has not yet occurred. *See* 20 Ill. Admin. Code § 504.810(a) ("A grievance must be filed…within 60 days *after* the discovery of the incident, occurrence or problem that gives rise to the grievance.") (emphasis added); *Palmer v. Fenoglio*, 510 F. App'x 476, 478 (7th Cir. 2013) (finding grievance submitted before plaintiff ever saw defendant doctor could not have challenged the doctor's conduct a month later). Therefore, Plaintiff's September 18, 2018 grievance cannot exhaust a claim against Dr. Zahtz for failing to adhere to Dr. Johnson's fracture diagnosis and recommendation for surgery beginning in April 2019. Plaintiff testified that she did not file any other grievances regarding medical treatment for her wrist. Accordingly, she did not timely file a grievance with respect to Defendant's medical treatment in April 2019.

### B. June 2018

As to Defendant's medical care in June 2018, Plaintiff testified that she did not file a grievance while a Dixon because she had no knowledge that her wrist was fractured until her diagnosis in September 2018. Plaintiff testified that before her transfer to Robinson, Dr. Zahtz and the nurses told her that her wrist was only bruised. Defendant argues that Plaintiff did not need to wait until she received a definitive diagnosis that her wrist was broken before filing a grievance because she knew something was wrong with her wrist immediately after the attack in June 2018. Defendant relies on *Eastman v. Larson*, No. 3:18-CV-543-NJR-MAB, 2019 WL 5212649 (S.D. Ill. Oct. 16, 2019), to support this argument. However, this Court finds *Eastman* distinguishable.

In *Eastman*, the plaintiff argued that his grievance, which was filed more than 60 days after his treatment with the defendant doctor had ceased, was timely because he filed it within 60 days of being diagnosed with arthritis in his feet and discovering that it could have been caused by the defendant's decision to prescribe foam insoles rather than orthopedic braces. The court rejected this argument and found that "[t]here is no requirement that an inmate have an official diagnosis before a grievance must be filed. Rather, the inmate must only have notice of the 'problem' giving rise to the grievance." *Eastman*, 2019 WL 5212649, at * 3. The court found that the plaintiff suspected he had arthritis earlier because within two months of receiving his insoles he complained to the health care unit that they did not work and subsequently made a request to see an orthopedic specialist because he thought he might have arthritis as a result of not having orthopedic braces.

6

Accordingly, the court found the plaintiff's grievance against the defendant untimely because it was not filed within 60 days of his request for medical care for his suspected arthritis.

However, in this case Plaintiff had no notice that she was receiving inadequate medical care for her wrist fracture until she was diagnosed with a fracture in September 2018. *See St. v. Els*, No. 17-CV-334-DRH-SCW, 2018 WL 7968904, at *6 (S.D. Ill. July 25, 2018), *report and recommendation adopted*, No. 17-CV-334-SMY-MAB, 2019 WL 949175 (S.D. Ill. Feb. 27, 2019) ("Plaintiff's grievance indicates that he did not discover that Defendant Els was incorrect in his diagnosis and prognosis of Plaintiff's eye condition until he saw Dr. Brummel in 2016. He filed a grievance within 60 days of that appointment, within the time frame set forth in the administrative code."); *Watford v. Newbold*, No. 3:17-CV-1252-NJR-GCS, 2019 WL 1950401, at *3 (S.D. Ill. May 2, 2019), *reconsideration denied*, No. 3:17-CV-1252-NJR-GCS, 2019 WL 6341321 (S.D. Ill. Nov. 27, 2019) ("Regardless of whether Watford actually had a cavity on tooth #31, he alleges he discovered Dr. Newbold's fraudulent concealment of that cavity on May 23, 2016. Thus, his May 24, 2016 grievance was filed within 60 days of his discovery of the incident, occurrence, or problem that gave rise to the grievance."). Contrary to Defendant's argument, Plaintiff is not now claiming that she had no idea that her wrist was injured. Plaintiff knew her wrist was injured during the attack and immediately sought medical attention. However, Plaintiff alleges that she was told by medical staff at Dixon that she only suffered from a bruised wrist. *See Weiss v. Barribeau*, 853 F.3d 873, 874 (7th Cir. 2017) ("The complaint was rejected as untimely, but the complaint examiner failed to explain how the complaint could be late given that until his ankle had been x-rayed Weiss had been told it wasn't broken."); *Johnson v. Baumhardt*, No. 19-CV-983, 2021 WL 3409259, at *4 (E.D. Wis. Aug. 4, 2021) (noting that prison officials should have investigated the plaintiff's grievance instead of rejecting it as untimely where the plaintiff was grieving about the inadequate medical treatment she recently discovered for a knee injury that occurred four years earlier). Accordingly, Plaintiff testified that despite pain in her wrist, she was under the impression that it was just a bruise because she was told by Dixon medical staff that there was nothing wrong with her wrist. Defendant has presented no evidence to show that Plaintiff should have known in June 2018 that Defendant was providing inadequate medical care for her fractured wrist. Plaintiff's wrist injury alone was not sufficient to alert her to Defendant's possible deliberate indifference where it is alleged that she was told there was nothing wrong with her wrist. Therefore, this Court finds that because Plaintiff did not discover that the care Defendant provided might be inadequate until September 2018, when she learned her wrist was fractured, her grievance relating to the treatment she received in June 2018 was timely filed.[3]

**II. Specificity**

---

[3] Plaintiff also testified that she did not file a grievance while at Dixon in June 2018 because the injury to her wrist rendered her unable to write and Dixon staff did not provide her a grievance form when she requested one while in segregation. Dixon's grievance procedures provide that a grievance filed after the expiration of the 60-day period "shall be considered" if it "was not timely filed for good cause." 20 Ill. Admin. Code § 504.810(a); *see also Pyles v. Nwaobasi*, 829 F.3d at 866 (recognizing that physical incapacitation and delay resulting from the actions of prison staff as possible bases for good cause) (citation omitted). Nevertheless, because this Court finds that Plaintiff's grievance was timely filed, it does not need to decide whether Plaintiff's physical incapacitation or Dixon staff's refusal to provide her with a grievance form satisfied the good cause necessary to file an untimely grievance.

Even though this Court finds that Plaintiff's grievance concerning her medical care in June of 2018 was timely, it nonetheless suffers from a fatal flaw. As Defendant points out, Plaintiff's grievance is focused on the nursing care and does not mention or describe Dr. Zahtz or reference any alleged misconduct or treatment by him.

The Seventh Circuit has held that the purpose of the exhaustion requirement is to provide "prison officials a fair opportunity to address [an inmate's] complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Plaintiff's grievance complained about the following events:

- she was taken to the health care unit by security staff to have her injuries addressed by nursing staff but was ignored when she sought treatment by the nurses
- she was not allowed to see the prison doctor
- she was given no medical treatment
- the nurses at Dixon acted as gatekeepers because they decide who gets to see the doctor

A plain reading of Plaintiff's grievance makes clear that the subjects of her complaint were the nurses at Dixon, not Dr. Zahtz. Not only does Plaintiff's grievance make no mention of receiving care from Dr. Zahtz or any other doctor, but Plaintiff also affirmatively states she was not allowed to see the prison doctor. *See Palmer v. Fenoglio*, No. 10-CV-718-MJR-SCW, 2012 WL 1466562, at *5 (S.D. Ill. Apr. 2, 2012), *report and recommendation adopted*, No. 10-CV-0718-MJR, 2012 WL 1466511 (S.D. Ill. Apr. 27, 2012), *aff'd*, 510 F. App'x 476 (7th Cir. 2013) (finding that plaintiff failed to exhaust against defendant doctor where the grievance only referenced meeting with nurses, correctional officers, and the crisis team and plaintiff does not name or try to describe the doctor and mentions only that he was not allowed to see a doctor). Plaintiff's grievance alleged that the nurses should not be allowed to determine who can and cannot see the doctor and made specific references to the nurses treating her like a "nuisance" and telling her that her "wrist is just bruised; it will be alright." Dkt. 48-3 at 2. Such targeted complaints of the nursing care suggest that Plaintiff was not grieving about a doctor's care. *See Morrow v. Wexford Health Sources*, Inc., No. 3:20-CV-00664-GCS, 2021 WL 3030329, at *5 (S.D. Ill. July 19, 2021) ("Plaintiff's attribution of blame to one specific individual suggests that he is grieving only about that individual's care."); *see also Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014) (affirming the dismissal of a nurse defendant because the plaintiff's grievance failed to name her, attempt to describe her, or otherwise indicate that the nurse was the target of the grievance); *Ambrose v. Godinez*, 510 Fed. App'x 470, 472 (7th Cir. 2013) (affirming the dismissal of two defendants where "no grievance mention[ed either defendant] by name or inference"); *Houston v. Jones*, No. 14 C 9462, 2015 U.S. Dist. LEXIS 170994, at *13 (N.D. Ill. Dec. 22, 2015) ("[W]here the grievance form requires an inmate to provide identifying information regarding responsible officers, and the inmate's grievance and relevant circumstances do not allow even an inference that the inmate is complaining of a particular official, the grievance may be insufficient to exhaust the inmate's administrative remedies as to that official."). Because Plaintiff's grievance focused exclusively on the nursing care and affirmatively stated that she was not permitted to see a prison doctor there was no indication or inference in the grievance that Plaintiff was complaining about Dr. Zahtz's or any other doctor's care in June of 2018.

The Seventh Circuit has taken a strict compliance approach with exhaustion, *see Dole*, 438 F.3d at 809, such that "grievances must contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). The IDOC grievance form that Plaintiff filled out instructs inmates to "[p]rovide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved." Dkt. 48-3 at 2. Plaintiff does not dispute that she was aware of Dixon's grievance procedures and that her grievance neither names nor describes Dr. Zahtz or the interactions he allegedly had with her in June of 2018. While it is true that "prisoners need identify names only to the extent practicable," *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010), Plaintiff testified that she knew Dr. Zahtz's name but did not include him in the grievance because she did not know how to spell his name. However, if Plaintiff intended to complain about Dr. Zahtz's conduct she could have referred to him as "the doctor" or "the prison doctor." The inability to spell a defendant's name does not relieve Plaintiff of the obligation to provide a description of what happened, when and where it happened or to "include as much descriptive information about the individual as possible." 20 Ill. Admin. Code § 504.810(c).

Finally, even though not cited by either party, this Court is cognizant of the Seventh Circuit's decision in *Maddox* where the court found that the failure to name a defendant "was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *Maddox*, 655 F.3d at 722. However, this Court views *Maddox* as entirely distinguishable where the grievance form at issue only asked for a brief summary, the prison responded to the grievance on the merits, and the grievance dealt with an administrative decision that the court found highly unlikely that the prison would be unaware of who was in charge of that decision. *Id.* at 721-22. None of those circumstances are present here. As set forth above, the grievance form asked for specifics, the grievance was not decided on the merits and based on the allegations of the grievance, specifically that Plaintiff was not allowed to see a prison doctor, and it is unlikely that prison officials would be put on notice that Plaintiff was complaining of a doctor's treatment.

Accordingly, the Court finds that Defendant has meet his burden to show that Plaintiff did not exhaust available administrative remedies with respect to the claims against him in the third amended complaint. Plaintiff did not file a grievance addressing medical care provided in 2019. Although Plaintiff timely filed her grievance for the allegedly inadequate medical care she received in June 2018, she did not sufficiently identify Defendant or his conduct and therefore has not exhausted her administrative remedies. However, Defendant's request for dismissal with prejudice because it is too late for Plaintiff to attempt to exhaust her administrative remedies is denied. The Seventh Circuit has unequivocally instructed that "*all* dismissals under § 1997e(a) should be without prejudice." *Ford*, 362 F.3d at 401 (emphasis in original); *see also Fluker v. Cty. of Kankakee*, 741 F.3d 787, 791-92 (7th Cir. 2013) ("We have held that dismissals under § 1997e(a) for failure to exhaust must be without prejudice. This is true even if exhausting administrative remedies will prove to be impossible....").

9

## CONCLUSION

      For the foregoing reasons, it is this Court's report and recommendation that Plaintiff's claims be dismissed without prejudice for failure to exhaust available administrative remedies.

Date: September 1, 2021        By:    _/s/ Lisa A. Jensen_
                                                       Lisa A. Jensen
                                                       United States Magistrate Judge